### William Botwinis, et al., v. Kate Allgood, et al.

1. INTOXICATION—*how question of, arising in action under Dram-Shop Act, determined.*   This question is, ordinarily, one of fact, to be determined by the jury.

2. PROXIMATE CAUSE—*how question of, arising in action under Dram-Shop Act, determined.*   Whether intoxication was the proximate cause of death is, ordinarily, likewise, one of fact, to be determined by the jury.

3. HYPOTHETICAL QUESTION—*when, objectionable.*   A hypothetical question is objectionable which purports directly to state or recite the evidence.

4. HYPOTHETICAL QUESTION—*upon what, should be based.*   A hypothetical question should be based upon a theory, each element of which is supported by some evidence in the case.

5. HYPOTHETICAL QUESTION—*what not essential to.*   It is not necessary that a hypothetical question should state all the facts in evidence, provided the evidence tends to establish such facts as are embodied in the question.

6. HYPOTHETICAL QUESTION—*how objection to, should be made.*   An objection to a hypothetical question, upon the ground that it contains elements not supported by any evidence in the case, should be specific, to avail on appeal.

7. OBJECTION—*when, waived.*   An objection urged in the trial court is deemed waived on appeal where it is neither urged nor argued thereupon.

Action on the case under Dram-Shop Act.   Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding.   Heard in this court at the November term, 1903.   Affirmed.   Opinion filed March 16, 1904.

SHUTT & GRAHAM, for appellants.

HAMILTON & CATRON and JOHN W. SHEEHAN, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action under the statute entitled "Dram-Shops," by appellees, who are the widow and children of George Allgood, deceased, against William Botwinis, a saloon-keeper, in the vicinity of the city of Springfield, Illinois, and Adam Kunz, the owner of the building in which the saloon was located. The plaintiffs recovered a judgment in the Circuit Court for $3,000 against both defendants, who appeal to this court.

The declaration charges that William Botwinis sold intoxicating liquors to said George Allgood, whereby he became intoxicated, and fell from a buggy, sustaining injuries which resulted in his death; that Adam Kunz owned the building in which liquor was sold, and knowingly permitted it to be used for that purpose.

The evidence shows that Allgood was thirty-one years of age, in sound health, and at the time of his death was employed as mule feeder in a coal mine; that on the afternoon of September 22, 1902, he left the mine between 4:30 and 5 o'clock, and went to the saloon of appellant, Botwinis, where he remained about thirty minutes, during which time he drank several glasses or schooners of beer. He then returned home to his supper; after supper he returned to the mine, remaining there about an hour. Between 8 and 8:30 o'clock he left the mine and went to Botwinis' saloon, where he remained until about midnight. He then, in company with one Page, started for Springfield, in a single-seated vehicle, without top or arm-rests, drawn by a horse which Page drove. When they arrived at the junction of two roads, and while moving at the rate of about five miles an hour, the horse shied, causing a lurch of the vehicle and Allgood to fall therefrom, his feet catching in the bed of the vehicle. As he started to fall Page caught him by the waist, and he hung suspended between the bed and the wheels. His stomach was ruptured by the

fall, and he died afterwards from the effects of the injury.
A tear two and one-half inches in length was found in the
upper posterior part of the stomach wall, and the perito-
neal cavity was found to contain about two pints of strong
alcoholic solution.

It is conceded that while in Botwinis' saloon Allgood
drank more or less beer, but as to the number of glasses, or
quantity, and as to whether or not he was intoxicated when
he left the saloon, the evidence is conflicting.    His widow
testified that at supper time he was not intoxicated, although
he had " plenty of drink and was in a talking humor."    A
number of witnesses, several of whom were in the saloon
all evening, and others at different times during the even-
ing for periods ranging from one to three hours, testified
that, in their judgment, he was sober when he left the saloon
to go to Springfield.

Whether Allgood was intoxicated at the time of his
death, and to what extent, were essentially questions for
the determination of the jury.    Tipton v. Schuler, 87 App.
517.    We have carefully examined the evidence and are
unable to say that the verdict of the jury was contrary
thereto.    The evidence shows that at the hour of 12:30
A. M., instead of returning to his home, he left the saloon
to go to Springfield, ostensibly for the purpose of getting
chicken sandwiches; that he was unable to retain his seat
in the buggy when the horse shied; that he had been drink-
ing before supper; that he drank a number of schooners of
beer during the evening; that the direct cause of his death
was due to the overloaded and distended condition of his
stomach.    These facts, together with testimony of Heck
that he had " a good load of beer in him when he left the
saloon," tend strongly to prove that he was at the time
intoxicated and that such intoxication was the proximate
cause of his death.    Whether his intoxication was the prox-
imate cause of his death was also a question of fact for the
jury.    Myer v. Butterbrodt, 146 Ill. 311.

Dr. Walsh, a medical expert, called by appellees, testified,
as shown by the abstract, as follows :

Botwinis v. Allgood.

1.  Q.  " Suppose, Doctor, that between six o'clock of the night Allgood was hurt, between that time and the time he was hurt he had drank, taken into his stomach, sufficient beer to so distend his stomach that a fall would rupture his stomach; what would you say as to the probability of that amount of beer in the stomach taken in during that time causing him to be intoxicated or not?"   (Objection by defendant.   Objection sustained.)

2.  Q.  "Doctor, suppose that Allgood had commenced just before supper, say in the neighborhood of six o'clock, and drank beer and ate very little supper and had continued drinking at intervals, say from nine o'clock, half-past eight o'clock, continued drinking from that time until twelve o'clock, drinking beer, and had during that time drank from ten to thirteen schooners of beer, holding a little less than a pint, what was the probability of him being intoxicated after drinking that much beer?"

Objected to by defendant.   No evidence to support the hypothesis.

The Court: "The testimony tends to prove that he drank some beer before supper, but it don't show how much. "

Mr. Hamilton:   " Yes, two or three glasses."

The Court:   " You have got to put the hypothesis within the number."

Mr. Hamilton:   "I cannot do it further than to say from eight to thirteen.   It is not possible to put it more accurate than that; that is giving them the advantage, I think, of the smaller number."

The Court:   " I have not kept account; you are sure about the count and understand that if you exceed it in your hypothesis, of course it will be error in the case.   I have a sort of recollection in a general way what they said about it.   I didn't think to keep count."

3.  Mr. Hamilton:   " Well, I think it is.   That is what I tried to do, and it is the smaller number and the larger number.   Well, now the substitute of that question from eight to thirteen, not less than ten glasses of beer, containing nearly a pint each."   (Objection by defendant.)

A. "I say it would depend a great deal in the space of time between which each glass of beer was drank. If he had started out and drank—"

4. Q. "1 suppose I may state that from half-past eight or nine he sat down to the table there and had drinks of beer right along without going out, getting up or moving." (Objection by defendant for misstating facts in evidence.)

The Court: " A portion of the question is wrong. There is no evidence that he went out."

5. Mr. Hamilton: " No, the evidence is that he never got up; he sat down and the beer was brought each time they played a game, would be brought and put in a pocket under the table, and it was drank along, and they played and drank and played and kept the thing up." (Objection overruled by the court, to which ruling of the court the defendants, by their counsel, then and there excepted.)

A. " I will say that ten glasses of beer might be excreted in that length of time without leaving the necessary signs of intoxication. It would not cause an extreme degree of intoxication. It would not cause stupor, there would be some intoxication."

6. Q. " Take into consideration, Doctor, in addition to that he commenced drinking before supper and ate little supper, and then, at half-past eight or nine, he sat down to the table and commenced playing cards in some sort of game in which the stake was beer to drink, and that was furnished and given to Allgood on the table, and he would drink along as they played; now what do you say as to whether a person, at the end of that time, would probably be intoxicated ? "

(Objected to by defendant. The question does not state the evidence.)

The Court: " I think it is a reasonably fair statement of it, as near as I can recollect." (Exception.)

Mr. Graham: " In addition to the objection already made, I want to add that there are matters included in the question that are not pertinent to the question, and also that a hypothetical question cannot include other matters

previously testified to, but it must be complete in itself."
(Objection overruled.   Exception.)

A.   "Allowing for the same number of glasses of beer,
ten, he would not be extremely intoxicated, but would be
suffering slightly from a slight effect of alcohol."

Cross-examination :

" I could not make a general answer to fit each case.
Men accustomed to drink beer can take more without effect
than others can.   A man thirty to thirty-five, strong and
healthy, in the habit of drinking beer constantly, would not
feel it so much as another.   A healthy man, taking some
exercise and drinking not more than five glasses of beer
between six o'clock in the evening and twelve, would possibly
be some affected, but he would not be what we ordinarily
call drunk.   By drunkenness I mean saturated with alcohol
so that as to have no control over the muscles.   With five
glasses of beer he would not be intoxicated so that the effect
could be noticed.   The medical theory is that there is
stimulation in intoxication while there is any alcohol in the
system."

Appellants insist that the objection to the question as
finally propounded should have been sustained for the reason
that it assumed the existence of a material fact which was
not warranted by the evidence; that the highest estimate
as to the number of glasses drank by Allgood during the
afternoon and evening, which could be based upon the evi-
dence, was seven, while the question assumed that during
that time he drank at least ten.   The question was clearly
objectionable in that, in the section thereof numbered 6,
counsel purports directly to state or recite the evidence.
That ground, however, is not urged or argued in this court
and is therefore deemed waived.

The objections interposed to the original question and to
the same as amended were general.   The grounds assigned
were that there was no evidence to support the hypotheses;
that the evidence was misstated, and that the question did
not state the evidence.   It is true, as contended, that hypo-
thetical questions must be warranted by the evidence; that

is to say, there must be evidence tending to prove each of the facts therein assumed. C. & E. I. R. R. Co. v. Wallace, 202 Ill. 132. It is not necessary, however, that each of the hypotheses contained in a hypothetical question should have been established by the evidence. If there is evidence tending to support the same, that is all that is required. Whether the facts stated are sufficiently established by the proof, is to be decided by the jury. C. & E. I. R. R. Co. v. Wallace, *supra*. Neither is it necessary that the question should contain all the facts in evidence, provided the evidence tends to establish such facts as are embodied in the question. C. & E. I. R. R. Co. v. Wallace, *supra*. Counsel for appellants having failed to state specifically in his objections that one of the grounds therefor was that the assumption that Allgood drank ten glasses of beer during the time, was unwarranted by the evidence, he cannot under his general objections complain of the ruling of the court, upon the ground that the quantity of beer drank was over-stated. The objections to the question upon that ground should have indicated specifically what particular fact was not warranted by the evidence so that if the court held the objection valid, counsel for appellees could have amended the same. Catlin v. Traders Ins. Co., 83 App. 40. We are of opinion, however, that the assumption in question was warranted by the evidence and that the court properly overruled the objection thereto.

While the exact period of time during which the ten glasses were assumed by the question to have been drunk, is somewhat indefinite, the question can reasonably and fairly be construed to include the time elapsing between the first visit of Allgood to the saloon before supper and his departure therefrom after midnight. The witness Hackett testified that he and Allgood came out of the mine together and went to the saloon of appellant Botwinis between 4:30 and 5 o'clock P. M.; that they drank a few rounds of beer; he didn't know how many. The evidence shows that Allgood was again at Botwinis' saloon from about eight o'clock until midnight; that while there he

played seven or eight games of cards; that a large glass or schooner of beer was served to each player at the end of every game, and that he drank his glass each time, with, perhaps, one exception.  It may be fairly assumed that the " few rounds " before supper was at least three glasses, and the evidence therefore tends to prove that he drank during the afternoon and evening, at least ten glasses, the number assumed in the hypothetical question.  Moreover, if it were true, as contended by appellants, that the number assumed in the question was excessive by one or two glasses, and the question therefore improper, we do not believe that the jury were prejudiced or misled thereby.  Appellants were permitted to propound a similar hypothetical question to Dr. Walsh, based upon the hypothesis that Allgood drank but five glasses of beer after supper.  The jury had the benefit of the answers to both questions and undoubtedly considered them in arriving at their verdict.

We find nothing in the record to warrant the contention that the jury were actuated by passion or prejudice.  The errors assigned by appellants, other than those referred to, are not urged or argued by appellants and are therefore waived.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*